1          UNITED STATES DISTRICT COURT

2           DISTRICT OF MASSACHUSETTS

3                        No. 1:17-cr-10328-WGY

4

5

6  UNITED STATES OF AMERICA

7

8  vs.

9

10  JAMES RAMIREZ

11

12                    *********

13

14            For Hearing Before:
             Judge William G. Young

15

16              Plea change

17

18            United States District Court
             District of Massachusetts (Boston)
             One Courthouse Way

19            Boston, Massachusetts 02210
             Wednesday, November 15, 2017

20

21                    ********

22

23       REPORTER: RICHARD H. ROMANOW, RPR
              Official Court Reporter
             United States District Court

24     One Courthouse Way, Room 5510, Boston, MA 02210
              bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3    ERIC S. ROSEN, ESQ.
          United States Attorney's Office
 4        J. Joseph Moakley U.S. Courthouse
          1 Courthouse Way, Suite 9200
 5        Boston, Massachusetts 02210
          (617) 748-3412
 6        Email: Eric.rosen@usdoj.gov
          For the United States
 7

 8    W. JAMIEL ALLEN, ESQ.
          Federal Defender Office
 9        15 Sleeper Street, 5th Floor
          Boston, Massachusetts 02210
10        (617) 223-8061
          Email: Jamiel_allen@fd.org
11        For the defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2                    (Begins, 2:30 p.m.)
3                    THE CLERK:  Criminal Matter 17-10328, the
4      United States versus James Ramirez.
5                    THE COURT:  Would counsel please identify
6      themselves.
7                    MR. ROSEN:  Good afternoon, your Honor, Eric
8      Rosen for the government.
9                    MR. ALLEN:  Good afternoon, your Honor, Jamiel
10     Allen on behalf of James Ramirez.
11                   THE COURT:  Do I understand that Mr. Ramirez
12     desires to plead guilty to the information that we have
13     before us?
14                   MR. ALLEN:  That is correct.
15                   THE COURT:  He may come forward to be inquired
16     of.
17                   (THE DEFENDANT, sworn.)
18                   THE COURT:  Would you state your full name.
19                   THE DEFENDANT:  Yeah, James Ramirez.
20                   THE COURT:  Mr. Ramirez, my name is Bill
21     Young, I'm the judge who presides in this session of the
22     court.  Now when I asked your lawyer, he said you wanted
23     to plead guilty to these charges.  Before I can let you
24     plead guilty -- and it's up to me whether you can plead
25     guilty, whether I'm going to allow you to plead guilty,
```

I have to find out certain things.

I have to find out that you know what you're doing.  I have to find out that you're clear on what you're giving up because you give up stuff, things that are very important to you if you plead guilty.  I have to be sure you know what you may be letting yourself in for, what will happen to you if you plead guilty.  I have to be clear that you're doing this voluntarily.

Now in a very real sense you're in the driver's seat here.  I see there's a plea agreement and you, with your attorney and with the government, you've had discussions, but you don't have to go through with this.  And I've got to be sure that this is what you want to do, not -- you can listen to your attorney, you can listen to your family, anyone that you want to take counsel from, but you're in the driver's seat, and you need to know that if you decide -- anywhere along as we talk this afternoon you decide that you don't want to plead guilty, just tell me, we'll stop, right there we'll stop, and I'll get your case ready for trial.  It will not make me angry, it will not disturb me, or mess up my afternoon.  And you'll go to trial and if you're found guilty, if that happens, oh, I'll give you a sentence, but it will never be higher, it will never be worse because you went to trial, because trial is one of

1    those things that is your right.  So if you want a

2    trial, I'll give you the fairest trial I know how and it

3    will never be worse for you because you went to trial.

4          Do you understand that?

5               THE DEFENDANT:  Yes.

6               THE COURT:  And lastly, I have to find out

7    that the government has enough evidence that if we did

8    go to trial, you could be found guilty to this

9    particular crime -- these crimes.  There's more than

10   one.

11         And you understand that?

12              THE DEFENDANT:  I do.

13              THE COURT:  Do you know what you're charged

14   with?

15              THE DEFENDANT:  Um, yes.

16              THE COURT:  Well, before we get to that --

17   well, you tell me, what are you charged with -- that you

18   understand you're charged with?

19              THE DEFENDANT:  Um, distributing fentanyl and,

20   um, the similar firearms charge.

21              THE COURT:  There is.  And I'm going to go

22   back over specifically what the government has to prove.

23   And it's not a test, but you've got to know what it is

24   the government has to prove.

25         But let me start, as I did not, let's start with

1   the "Do you know what you're doing?"

2      How old are you, sir?

3        THE DEFENDANT:  55.

4        THE COURT:  How far did you go in school?

5        THE DEFENDANT:  I have a Bachelor's Degree.

6        THE COURT:  Have you ever been treated for a

7   mental illness of any sort?

8        THE DEFENDANT:  No.

9        THE COURT:  Are you aware of any mental

10   illness that you may have?

11        THE DEFENDANT:  No.

12        THE COURT:  Are you taking any medicine today?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Would you tell me what it is and

15   what it's for?

16        THE DEFENDANT:  There's a lot of them.

17        THE COURT:  Okay, as best as you can recall.

18        THE DEFENDANT:  I take three medicines for

19   high blood pressure, um, Losartan, hydrochlorothiazide

20   -- there's another one, um, methychloride, for the high

21   blood pressure.  And I have diabetes, I take Metformin

22   and glucosamine for diabetes, the closest one.  And the

23   gout, allopurinol for the gout.

24        THE COURT:  Okay.  Now, are you taking those

25   medications as they're prescribed?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You made mention that you took a

3    couple of them this morning and you're supposed to take

4    them, I take it?

5          THE DEFENDANT:  No, I took them.

6          THE COURT:  So you've been taking the

7    medicines you're supposed to take?

8          THE DEFENDANT:  Yes.

9          THE COURT:  How do you feel?

10         THE DEFENDANT:  I feel okay.

11         THE COURT:  All right, so you feel normal?

12         THE DEFENDANT:  Yeah.

13         THE COURT:  And the reason I ask is I just

14   want to be sure you're in charge here, that you can make

15   your own decisions this afternoon, because this is a

16   very important hearing for you.

17         And do you feel you can?

18         THE DEFENDANT:  Yes, I can.

19         THE COURT:  All right.

20         Under the influence of any drug?

21         THE DEFENDANT:  No.

22         THE COURT:  Under the influence of alcohol?

23         THE DEFENDANT:  No.

24         THE COURT:  Now let's talk about what you are

25   charged with and what the government has to prove.

1    THE DEFENDANT:  Okay.

2    THE COURT:  You're charged with conspiracy to

3    distribute and possess with intent to distribute cocaine

4    and fentanyl.

5    Now what they've got to prove before you could be

6    found guilty of that is they've got to prove two things,

7    that you, and at least one other person -- not an

8    undercover cop, but someone who is also a conspirator,

9    you and at least one other person, um, agreed -- that's

10   what a conspiracy is, it's a knowing agreement, to

11   violate the law in the specific way they've charged it,

12   to possess, get your hands on and possess with intent to

13   distribute cocaine and fentanyl.  So the first thing

14   they have to prove -- they've made these charges, if we

15   go to trial, they've got to prove the charges, prove

16   them beyond a reasonable doubt to the jury unanimously.

17   Now on conspiracy they have to prove you agreed.

18   You're not a conspirator just because you hung around

19   with the wrong people.  You're not a conspirator even if

20   other people were dealing drugs and you knew about it

21   and you didn't do anything about it, that doesn't make

22   you a conspirator.  You're a conspirator if they can

23   prove, beyond a reasonable doubt, that you, you yourself

24   and at least one other person, you agreed.

25   Now the agreement, it doesn't have to be in

writing, like this plea agreement, it doesn't have to be
a handshake, it doesn't have to be a wink or a nod, it's
got to be a real agreement, that two or more of you
agreed to do something that the law forbids.  That's the
first thing.

The second thing is they've got to charge you, and
they have, but then specifically they've got to prove
the specifics of what they charge was the violation of
the law.  Now here they charge possession -- well,
strike that.  They charge -- yes, they charge that what
the idea of the conspiracy was was to possess, with
intent to distribute, cocaine and fentanyl.

So "possess" means what anyone would think it
means, you possess things that you have the control
over, you can stash it, you can carry it, you can put it
where you want, you control it, that's "possess."  And
then to possess with intent to distribute it.  So the
intent has got to be you're possessing it not to feed
some habit of your own, you're possessing it with the
idea of passing it on to another person.

Now usually that means to sell it.  It doesn't
have to.  "Distribute" in the law simply means to pass
it on to another person.  And the "it" here has to be
one or both of two contraband drugs you've got no right
to, cocaine and fentanyl.  They've got to prove that

you, and at least one other person, had in mind, you
agreed -- you agreed now, that's the first step, but
what specifically?  To possess with intent to distribute
cocaine and fentanyl.

You understand that's the first charge?

THE DEFENDANT:  Yes.

THE COURT:  Now, they don't have to prove you
did it, just that you agreed and that was the specific
intent of the agreement.  That's the first charge.

Now the second charge is that you were a felon in
possession of a firearm.  Now once a person is convicted
of a felony, they may never again possess a firearm.  So
for this they have to prove a variety of things.  First,
they have to prove that you're a felon.

A "felon" is a person who at sometime in the past
was convicted, in either a state court or a federal
court, but was convicted -- either on a plea or after a
trial, was convicted of a crime, any crime that carried
a potential sentence of more than a year.  Not that you
got more than a year, just that in the law books the
potential sentence was more than a year.  That makes you
a felon.

THE DEFENDANT:  Does it matter how long ago
that happened?

THE COURT:  No.

1        THE DEFENDANT:  No, it doesn't.  Okay.

2        THE COURT:  Once you are a felon, then unless

3   you are pardoned from that crime, you're a felon and you

4   can never again possess a firearm or ammunition.

5        So the rest of it is, one, you're a felon; two,

6   you possess; and the same idea, to "possess" it is to

7   have it, to carry it, but also to control it, to stash

8   it, it's something that you can control, a firearm.

9        A "firearm" is a mechanical device that's designed

10  to shoot a bullet out of a barrel, it's everything from

11  the smallest type of concealed handgun to the largest

12  type of cannon -- although really we're not talking

13  about cannons, but it's rifles, it's shotguns, it's any

14  of those mechanical devices, it's a revolver, it's an

15  automatic, a slide-automatic, but it's got to be

16  designed to shoot that projectile out of a barrel.  And

17  it's true that it doesn't have to work either, but if it

18  was designed to do that, it's a firearm.  So you're a

19  felon who possessed a firearm.

20       However, there is one more thing the government

21  has to prove because we're in the courts of the United

22  States.  They've got to prove the firearm -- they don't

23  have to prove that you knew this or that you carried it

24  across state lines, they've got to prove that from the

25  time it was manufactured in the factory until you were

found to possess that firearm, the firearm went across

the state lines, or it came from outside the United

States into the United States, and that piece is as

important as the other things.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Now I keep talking about "proof"

and now we'll talk about your rights here.

You have the right to this trial we're talking

about, that's your constitutional right, a jury will

decide, not me, and you'll have some say, through

Mr. Allen, as to who sits on that jury.  The government

brought the charges, so the government has to prove the

charges on evidence beyond a reasonable doubt.  The jury

will decide.

At the trial you have the right to confront the

witnesses against you, that means you have the right to

sit right here in the courtroom and look at them, but

far more than that, you can confront them by or through

your attorney, he can ask them questions, he can

challenge their testimony, he can point out the

weaknesses in it, you can call witnesses on your own

behalf, he can make arguments on your behalf at the

appropriate time.  You can testify on your own behalf,

but that implicates another right, you don't have to

testify, you don't have to do anything.  You don't have

to call witnesses, you don't have to allow him to speak

on your behalf, you can be utterly silent.

To the extent you're silent I say to the jury, and

these are the words I will use, I will say "Mr. Ramirez

is an innocent man, innocent, he starts this trial

innocent, and don't hold it against him that we're here

and we're going to have a trial," and I make that just

as forceful as I know how.  And that applies to me too

in this sense, you are and I are meeting for the first

time, we've never discussed anything, I see we've got

you in custody, that's so you'll show up at the trial,

but I take you as an innocent man.  I have to.  I'm not

giving you anything.  All these things are your

constitutional rights.

Do you understand you have these rights?

THE DEFENDANT:  Yes, I do.

THE COURT:  All right.  Now let's talk about

what may happen to you.

Oh, and you have one other right here and I should

mention it.

The government is proceeding against you by way of

something they call an "information" and it's the

charge, it's where they write out the charge.

THE DEFENDANT:  The complaint.

1          THE COURT:  Yes, that's right, the complaint.
2    But you have the right to make them go first before a
3    grand jury and present their evidence there.
4          Now a grand jury is a jury of the people, they
5    meet in secret, you can't be there, your attorney can't
6    be there, they're not voting as to whether you're not
7    guilty or guilty and they're not voting unanimous, they
8    only vote by majority vote, and if they vote by majority
9    vote, then they can indict you.  But the benefit to you
10   of going before a grand jury is that if they voted not
11   to indict you, then the government can never come after
12   you on these charges.
13          Do you understand that's what a grand jury does?
14          THE DEFENDANT:  Yes.
15          THE COURT:  All right.
16          Now I've been given this waiver, that means you
17   give up your right to be indicted, and I see this
18   signature here.
19          THE DEFENDANT:  Yeah.
20          THE COURT:  Is that your signature?
21          THE DEFENDANT:  Yes, it is, your Honor.
22          THE COURT:  Now, what passes between you and
23   Mr. Allen, that's private to you, but I just want to
24   know, have you talked all this over about waiving the
25   indictment?

1          THE DEFENDANT:  Yes, I spoke to him about

2     that.

3          THE COURT:  Right, and do you in fact, do you

4     want to waive your indictment?  And that doesn't mean

5     you're guilty of anything, it means that this

6     information is the complaint, it's what they can charge

7     you on this document.

8        You're okay with that?

9          THE DEFENDANT:  Yeah.

10          THE COURT:  All right.  I find that Mr. James

11     Ramirez knowingly, intelligently, and voluntarily waives

12     indictment and I will so endorse the waiver.  Now let's

13     talk about what may happen to you.  And the way I do

14     that is I'm going to talk to the prosecutor.  And that

15     doesn't mean I'm not going to pay attention to what you

16     want to say or your attorney wants to say at the time of

17     the sentencing, but the prosecutor probably is going to

18     explain to me the worst that can happen to you, and he's

19     the government official who's prosecuting this case.

20     You need to know the worst that can happen to you before

21     we can go any further.  So listen to what he says.  If

22     you plead guilty at the time of sentencing, I will talk

23     to him, but I'll also talk to your attorney and I'll

24     talk to you.

25        So, Mr. Rosen, you know my practices, let's first

1  ask you are there any enhancements here?

2          MR. ALLEN:  Your Honor, before we do that, due

3  to a last-minute development, may I have one moment with

4  Mr. Rosen?

5          THE COURT:  Of course you may.

6          (Pause.)

7          MR. ALLEN:  Thank you, your Honor.

8          THE COURT:  So you understand why I'm talking

9  to Mr. --

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right, Mr. Rosen, are there

12  any enhancements?

13          MR. ROSEN:  Yes, there are, your Honor.

14          THE COURT:  What are they?

15          MR. ROSEN:  The government and the defendant

16  has agreed to a two-level enhancement for maintaining a

17  premise for the purpose of manufacturing or distributing

18  a controlled substance.  The government will most likely

19  seek to prove at sentencing -- and I'm aware of your

20  Honor's practice of "beyond a reasonable doubt," a

21  two-level enhancement for the possession of a firearm in

22  connection with the crime.  The base offense level here

23  is 34, as the parties have agreed it.

24          THE COURT:  Well, let's go step by step.

25  You've answered my question.  Let me inform him of that.

1    MR. ROSEN:  Yes.

2    THE COURT:  Now, proving the possession of a

3    firearm in connection with a drug offense, that has a

4    direct impact on the sentence, isn't that right?

5    MR. ROSEN:  In this case it, um, it has a

6    two-level enhancement for the sentencing guidelines.

7    THE COURT:  But that's all?

8    MR. ROSEN:  That's all.  There is a mandatory

9    minimum with this sentence and there's also other --

10   THE COURT:  And we'll get to that.  But isn't

11   this on and after from --

12   MR. ROSEN:  No, this isn't a 924C, your Honor.

13   THE COURT:  Okay.

14   He knows these technical things, I don't go by the

15   numbers, but you need to know and I need to know, so I

16   can advise you, I say, "Well, are there any

17   enhancements, anything that he's going to try to move or

18   mention to me that could make your sentence heavier --

19   worse?"  And he says "Yes, there is," he says there are

20   two things.

21   Well, as I understand the Constitution, if he

22   wants to say that, and he has every right to, but he's

23   going to have to prove those things on real evidence to

24   the jury beyond a reasonable doubt, either that or

25   you're going to admit to them as part of the plea.

1          Do you understand that if you go to trial, I'm

2     going to make him prove those things as well as anything

3     else?

4               THE DEFENDANT:  I understand that.

5               THE COURT:  All right.  So one of them, which

6     he says is covered by the plea agreement, he says that,

7     um, I ought go up two levels, and you've agreed that I

8     could, because you maintained premises for the purpose

9     of manufacturing, um, or distributing the controlled

10    substance.

11         Now you understand I'll make him prove that?

12              THE DEFENDANT:  I do.

13              THE COURT:  And when we get to the plea, he's

14    going to be -- and I'm going to be looking to see

15    whether you will admit to that because either it's

16    proved or you admit to that, you understand?

17              THE DEFENDANT:  Okay.

18              THE COURT:  Another point here is, um, while

19    he didn't specifically mention it, he says the

20    conspiracy involved here involved a conspiracy to

21    distribute between 4 and 6 kilograms of fentanyl and 2

22    kilograms of cocaine, that's what he says.

23         Now the quantity of drugs, that also bears on the

24    potential sentence.  So again I'll make him prove that,

25    if that's what he says, or we're going to see whether

1   you admit to that this afternoon.

2       Do you understand?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  And then, if I was following

5   Mr. Rosen, even though it's not in here, if he goes to

6   trial, but not otherwise, you're reserving your right to

7   seek to prove that the possession of the gun was in

8   connection with the drug distribution?

9           MR. ROSEN:  Not quite, your Honor.  At the

10  sentencing in the plea, um, we will seek to prove the

11  2-point enhancement for the possession of a firearm, and

12  that's set forth in the Page 2 of the plea agreement, it

13  says "The parties otherwise have no agreement as to the

14  application of the sentencing guidelines and reserve all

15  rights with respect to how they apply to the defendant."

16          THE COURT:  Um --

17          MR. ROSEN:  We just haven't reached an

18  agreement on that, your Honor.

19          THE COURT:  I understand.  I'm following.

20  Then I appreciate it, and I appreciate your

21  thoroughness, but how do you propose that I resolve

22  that?  And really I'm going to ask him, of course, but

23  as I see it there's three ways we can resolve it.  I

24  could take the plea and have a trial on that, but

25  because I think he's got a right to an evidentiary

1  hearing, proof to the jury beyond a reasonable doubt.

2  So one way to do it is to have a trial just on that.

3  Another way is to have a trial, but before me, he waives

4  the jury, and I'll decide.  The third way is, as most

5  judges do, but I think his constitutional rights are

6  broader, we just argue that at the time of sentencing

7  and I decide whether I am convinced that the two-level

8  enhancement applies.

9       First, you tell me how you think that's going to

10 be handled and then I'll ask him.

11           MR. ALLEN:  Your Honor, I think the way it

12 should be handled, and this is something we haven't

13 completely discussed, but one of the first options, um

14 --

15           THE COURT:  And that's fine.

16      Now, Mr. Rosen, just so I'm clear what the

17 government's position here is, if we do one of the first

18 two options, you're still going to give him the discount

19 for sparing you the burden and expense of a trial?

20           MR. ROSEN:  That's correct, your Honor.

21           THE COURT:  Fine.  All right.  Then here's how

22 we can explain it to him.

23      There's another piece here that your attorney

24 properly says to me hasn't been agreed to.  Mr. Rosen is

25 suggesting to me that while you're going to agree you're

a felon in possession of the firearm, you're not
agreeing that you had the firearm in connection with the
distribution of drugs.  Even though you don't agree to
it, he tells me he thinks he can prove it.  Your
attorney tells me that you're not agreeing to that and
we're going to have to have a trial of some sort as to
that.  I am saying to you, you can have a jury trial on
that and the jury will decide.  If you wanted to give up
a jury trial, I would decide.  All I can tell you is I
haven't gotten any basis to decide now, I decide things
on evidence, and while I respect all the attorneys, what
attorneys tell me isn't evidence, it's not proof of
something.

So do you understand that when we get to what
you'll agree to, what actually happened, you're not
agreeing, the way I see it, that you -- you'll agree
you're a felon in possession of a firearm, but you're
not agreeing you possessed that firearm in connection
with the distribution of drugs.

Is that how you understand things here?

THE DEFENDANT:  Yes, I do.  And, I guess, it
will be discussed at the time of sentencing?

THE COURT:  Well, it will be discussed or
we'll hold a hearing.  But the short of it is I'm not
going to hold another two levels against you on that

1    basis unless, after a hearing, I came to that conclusion

2    or a jury came to that conclusion.

3         Do you understand that?

4              THE DEFENDANT:  I do.

5              THE COURT:  Now even though that isn't agreed

6    to, I'm going to turn to Mr. Rosen now and I'm going to

7    say to him, "Tell me what the highest sentence is, what

8    the top of the guidelines are -- because I don't think I

9    can go higher than that, what the top of the guidelines

10   are without any reduction because you're sparing them

11   the burden and expense of a trial."  When he's told me

12   that, I want to know what the guideline sentence will be

13   even if the two levels that are still in dispute, the

14   government wins on that, because you need to know the

15   worst here.  Things could be better, but you need to

16   know the worst.  And he tells me here there's a minimum

17   mandatory sentence.  If you plead guilty, there's a

18   minimum that I have to sentence you to.  There won't be

19   any discussion about how high or how low, the minimum --

20   I've got to do at least the minimum.

21        You understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  So listen to what he says now, as

24   I will, because this is what we'll be talking about, if

25   you plead guilty, at the time the case comes on for

1    sentencing or hearing about sentencing.

2        Mr. Rosen?

3            MR. ROSEN:  At this time, your Honor, the

4    government believes that the mandatory minimum is the

5    top of the guidelines, so it would be 240 months.

6            THE COURT:  So as I construe the guidelines,

7    if everything goes your way, he's facing a 20-year

8    sentence.

9            MR. ROSEN:  Correct.

10            THE COURT:  And as I construe the guidelines,

11    I can't go higher, because that's, in my view,

12    unfettered discretion, so you're flat telling me I can't

13    go lower because that's a minimum mandatory, and you

14    know my practice, I'm not likely to go higher, so he's

15    really looking at a 20-year sentence.

16            MR. ROSEN:  Yes, and just so the record is

17    complete, can I --

18        May I approach, your Honor?

19            THE COURT:  Of course.

20

21

22

23

24

25

1          (In open court.)

2          THE COURT:  So really this two levels that

3    we're talking about is moot, isn't it?

4          MR. ROSEN:  It would be moot except for the

5    circumstance that I just brought to your Honor's

6    attention, at which point I think it would affect the

7    guideline range.

8          THE COURT:  I understand.  All right.

9          MR. ROSEN:  So chances are we'll work

10   everything out before sentencing but --

11         THE COURT:  Well, he can't be sure of that and

12   we're going to not depend on that.

13        So when I ask him, he tells me that I really don't

14   have much choice here given the laws that our Congress

15   has passed.  Now if you admit to these things, the great

16   likelihood is you're looking here at 20 years in prison,

17   do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.

20        Now, in this case you have an agreement.  (Reads.)

21   And, um, I mean let me show you the last page of that.

22        Is that your signature there?

23         THE DEFENDANT:  Yeah.

24         THE COURT:  And just look -- I want you to be

25   sure, that this is your plea agreement, isn't it?

        1              THE DEFENDANT:  Yeah.

        2              THE COURT:  Well, that's the first page there.

        3              (Shows to defendant.)

        4              THE DEFENDANT:  (Reads.)  Yeah.

        5              THE COURT:  That's it.  And you read that

        6    before you signed it?

        7              THE DEFENDANT:  I did.

        8              THE COURT:  You talked it all over with

        9    Mr. Allen?

       10              THE DEFENDANT:  Yes.

       11              THE COURT:  All right.

       12         Now, other than the matter that Mr. Rosen just

       13    made, um, raised at sidebar, um, other than that,

       14    there's no other agreement that I don't know about, is

       15    there?

       16              THE DEFENDANT:  No.

       17              THE COURT:  Did anyone promise you anything to

       18    get you to plead guilty?

       19              THE DEFENDANT:  No, just that agreement.

       20              THE COURT:  That was mentioned.  Fine.  And as

       21    I understand that, that is that they will tell me about

       22    certain things and I could take those matters into

       23    account, correct?

       24              THE DEFENDANT:  Yes.

       25              THE COURT:  Okay.  Has anyone threatened you

1   with anything to get you to plead guilty?

2           THE DEFENDANT:  No.

3           THE COURT:  And this is a conspiracy now, so

4   are you covering up for someone else by pleading guilty

5   yourself?

6           THE DEFENDANT:  No.

7           THE COURT:  Do you understand that conviction

8   of these crimes, if you're not a citizen, could have the

9   consequence of your being deported, denied admission

10  under the laws of the United States, denied

11  naturalization under the laws of the United States, do

12  you understand that?

13          THE DEFENDANT:  I do.

14          THE COURT:  All right.  Have you had enough

15  time to talk all this over with your attorney,

16  Mr. Allen?

17          THE DEFENDANT:  Yes, I have.

18          THE COURT:  Do you think he's been a good

19  attorney for you, gotten for you those things that are

20  your rights under the law?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Are you satisfied with his

23  representation of you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You still want to plead guilty?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Um, why?

3           THE DEFENDANT:  Because I think they have a

4    lot of evidence.

5           THE COURT:  You think that if you went to

6    trial you would be found guilty?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  All right.  And you want whatever

9    advantages the plea agreement gives you, you're looking

10   for those advantages in the real world, right?

11          THE DEFENDANT:  Exactly.

12          THE COURT:  Okay.  But you're prepared to

13   admit they've got a lot of evidence, so if we go to

14   trial, it looks like you'll be found guilty, is that the

15   truth?

16          THE DEFENDANT:  That's the truth, yeah, your

17   Honor.

18          THE COURT:  All right.

19       Now what I'm going to do now is have Mr. Rosen

20   tell me briefly what he hopes he could prove.  He's not

21   going to say anything about any connection between this

22   firearm, though he's got to mention it because you're

23   going to agree you're a felon in possession of a

24   firearm, he's not going to say anything about any

25   connection between a firearm and the distribution of

drugs, that hasn't been worked out, we'll see how that

all gets worked out, but you're not pleading guilty to

that.  I'm clear on that.  He won't mention it.  But the

other things he will mention, including the 4 to 6

kilograms and a kilogram of cocaine, he'll mention the

use of a house for the manufacture of drugs, and he'll

mention the other things that you and I have been

talking about.  I'll listen to him.  You listen to him.

When he's done I will ask you are those things true?

Now, Mr. Rosen, briefly.

MR. ROSEN:  Yes, your Honor.

As you're aware, this is a, um, part of the

large-scale wiretap case involving Alex Fraga and Kevin

Fraga from Cape Cod.  The wiretap began in March of 2017

and continued through the end of August, 2017.  The

interceptions essentially showed that Alex and Kevin

Fraga were distributing heroin, fentanyl, and other

narcotics, including cocaine, on Cape Cod.  The

interceptions further showed that Mr. Ramirez supplied

the narcotics to Kevin Fraga and, as far as we know from

both, um, statements made by cooperating witnesses as

well as the interceptions, Mr. Ramirez was the only

supplier to Mr. Kevin Fraga.

Specifically we heard a lot of interceptions where

Mr. Ramirez was meeting together with Kevin Fraga to

pick up money and to distribute to him fentanyl, as well
as fentanyl pills -- for each 100 fentanyl pills, that
equals 10 grams of fentanyl, pursuant to interceptions
and drug seizures.  We also have three controlled buys
of the fentanyl pills from Mr. Ramirez himself.

On the wire we heard about 2,000 pills being
discussed between Ramirez and Kevin Fraga.  In late
August of 2017, we arrested Mr. Ramirez and searched his
residence and we recovered approximately 1300 pills, and
then in, um, a few days later we searched the safety
deposit box where we recovered the firearm at issue here
in the information, the Walther .22 caliber pistol, as
well as 1300 additional fentanyl pills, and that firearm
was a, um -- traveled from New Hampshire to
Massachusetts where it had been purchased, and
Mr. Ramirez is a felon, he has been convicted of cocaine
trafficking beforehand.  In total that adds up to about
5,000 fentanyl pills, which is about 500 grams of
fentanyl.

In addition, we searched and seized Kevin Fraga's
winnebago where we had seen Mr. Ramirez and Kevin Fraga
doing deals together and inside were approximately 3
kilograms of fentanyl as well as approximately 1
kilogram of cocaine.  And then when we searched Kevin
Fraga's car, we saw an additional 350 grams of fentanyl

as well as cocaine.  And as well as in Mr. Kevin Fraga's
hotel room, we found an additional nearly 100 grams of
fentanyl.

So all in total we add up to about just over 4
kilograms of fentanyl, which is where we have the 4 to 6
kilogram range, as well as approximately 1 to 2
kilograms of cocaine from both calls as well as the
seizure.

In terms of the stash house, we have seen -- we
had done drug deals at 5 Everett Ave., um, owned by
Mr. Ramirez, where Mr. Ramirez would come there, collect
the drugs from that location, sell them both to a
source, and as well as, um, when we searched it there
were 1300 fentanyl pills inside.  And we also had 10
Abbottsford Ave. in Dorchester, which is a place that
Mr. Ramirez used together with one of his distributors,
Kelvin Chalez, and he would pick up drugs from there,
have them packaged and mixed at this location and then
deliver them to Kevin Fraga on Cap Cod.

THE COURT:  Did you hear what Mr. Rosen had to
say?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand it?

THE DEFENDANT:  I do.

THE COURT:  Now you're not pleading to

anything that connects the gun in the safety deposit box
to this other drug activity, but having said that, are
all those things that Mr. Rosen said, so far as you
know, are they all true?

THE DEFENDANT:  Yes.

THE COURT:  So as I understand it then, you're
pleading guilty because they have all this evidence and
you acknowledge that that could well find you guilty of
these crimes and in order to get the benefits of the
plea agreement, is that the truth?

THE DEFENDANT:  Yes.

THE COURT:  I find that Mr. James Ramirez
knowingly, intelligently, and voluntarily exercises his
right to plead guilty.  The Clerk may accept the plea.

This is all very serious, but this is most
serious.  She's going to say, in the proper way, "You
earlier pleaded not guilty, do you want to change your
plea?"  If you don't want to change it, you want to
still plead not guilty, tell her, "No," you don't want
to change it.  Fine by me.  We'll get ready for trial.
If you want to plead, you say "yes."  Then in the
appropriate way she'll ask you, "How do you now plead,
guilty or not guilty?"  If you plead guilty, when the
Clerk is asking you, you're guilty, no taking it back or
starting over.

1    Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  The Clerk may accept the plea.

4              (Pause.)

5              THE COURT:  Oh, I did not.  Thank you.

6         The Clerk actually, as she always is, is very

7    helpful.

8         Back in the day when people couldn't read -- well,

9    most people couldn't read, one of the rights you have --

10   since this is an information and you haven't really --

11   you've never pleaded in response to this, is that true?

12             MR. ALLEN:  That is correct.

13             THE COURT:  Right, so this is your chance to

14   plead to this.  So she's going to say, "Well, all right,

15   here's this information, how do you plead, guilty or not

16   guilty?"  One of your rights is to have her read this

17   whole information right here in open court and that's --

18   so we did that in the days so people could hear what

19   they were charged with.

20        In your case you've read this, haven't you?

21             THE DEFENDANT:  I've read it, yeah, your

22   Honor.

23             THE COURT:  And you've talked it all over with

24   your attorney?

25             THE DEFENDANT:  Yes.

1           THE COURT:  Do you want her to read it in open

2  court?

3           THE DEFENDANT:  Not necessarily.

4           THE COURT:  You don't need that?

5           THE DEFENDANT:  No.

6           THE COURT:  So he waives the reading of the

7  information.

8      So she's going to say, "Now how do you plead?"

9  This is your chance to plead.  If you plead not guilty,

10  we'll get it ready for trial.  If you plead guilty,

11  you're guilty, no taking it back.

12      Do you understand?

13           THE DEFENDANT:  Yes.

14           THE COURT:  The Clerk may arraign Mr. Ramirez

15  on this information.

16           THE CLERK:  Mr. Ramirez, the United States

17  Attorney has charged you with a two-count information

18  charging you, within Count 1, conspiracy to possess

19  fentanyl and cocaine with the intent to distribute in

20  violation of Title 21, United States Code Section 846,

21  and in Count 2, possession of a firearm by a convicted

22  felon, in violation of Title 18, United States Code

23  Section 922(g)(1).  How do you now plead to Counts 1 and

24  2, guilty or not guilty?

25           THE DEFENDANT:  Guilty.

1    THE COURT:  Thank you.  You may step down.

2    (Defendant steps down.)

3    MR. ROSEN:  Your Honor, could I just inform

4 the defendant about the forfeiture that's in the

5 indictment?

6    THE COURT:  Well, it has forfeiture

7 allegations.  I think my -- but I will.

8    MR. ROSEN:  Okay.

9    THE COURT:  Mr. Rosen wants to be sure,

10 Mr. Ramirez, that I have called to your attention that

11 certain property is to be forfeited by this plea, that

12 is the government will take this property subject to the

13 rights of other claimants other than you, and as I read

14 it here there are three major things.  $250,000 in

15 United States currency.  Real property at 5 Everett

16 Avenue, Unit 5-1, in Boston.  And a Ford F-150 truck.

17  Do you understand that the government is seeking

18 forfeiture of those items?

19    MR. ALLEN:  And, your Honor, if I may briefly?

20 With regard to the Ford and with regard to the money,

21 Mr. Ramirez has an understanding.  I just wanted to put

22 on the record the understanding with regard to 5

23 Everett, that's a property not in his name.  His

24 understanding is that he forfeits any interest that, um,

25 the government believes he has in it.

1          THE COURT:  That's my understanding too.

2          MR. ROSEN:  Yes, that's fine.

3          THE COURT:  All right.

4     With the amendments that Mr. Allen properly

5     raises, is that your understanding, Mr. Ramirez?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Very well.

8     I propose sentencing for Thursday the 8th of

9     March, 2018 at 2:00 p.m.

10    Is that satisfactory, Mr. Rosen?

11         MR. ROSEN:  Yes, your Honor.

12         THE COURT:  And Mr. Allen?

13         MR. ALLEN:  Yes, your Honor.

14         THE COURT:  Now while he's here, can you set

15    up an interview with probation so that a presentence

16    report may be commenced, Mr. Allen?

17         MR. ALLEN:  At this time of day, your Honor, I

18    don't know if we can complete it, but I'll set the

19    interview.

20         THE COURT:  If you would.

21    All right, he's remanded to the custody of the

22    marshals.  We'll recess.

23              (Ends, 3:30 p.m.)

24

25

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes, before Judge William G. Young, on Wednesday, November 15, 2017, to the best of my skill and ability.


/s/ Richard H. Romanow 1-23-18
_____
RICHARD H. ROMANOW   Date