UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | CRIMINAL NO. 17-cr-10328-WGY |
| v. | ) | |
| | ) | |
| JAMES RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE FROM INCARCERATION**

The United States of America hereby responds to the Defendant's Expedited Motion for Compassionate Release. Doc. 111. The government opposes relief, and requests that the Defendant's motion be denied without prejudice. This Court does not have jurisdiction to grant the relief sought, and as such, it should deny the motion without a hearing.

**BACKGROUND**

On February 20, 2020 the Court sentenced the defendant to 66 months in custody for his participation in a cocaine and fentanyl conspiracy and illegal possession of a firearm. Docs. 108, 109. The defendant is currently at the Brooklyn Metropolitan Detention Center (MDC) in Brooklyn, New York. According to the Bureau of Prison's (BOP) website, the defendant's projected release date is April 29, 2022 – slightly over two years from today.

On April 13, 2020, the defendant filed the instant motion requesting this Court reduce his sentence to time served. Doc. 111 at 1. The defendant's motion is based entirely on the possibility that he may become exposed to COVID-19, which because of his diabetes, could result in severe illness if he is infected. *Id.* The defendant states in his motion that he first filed an administrative request for compassionate release with the Warden of MDC on April 2, 2020 – just fifteen days

from today. *Id.* at 12. The government recognizes the gravity of the defendant's condition should he contract COVID-19 and discusses BOP's aggressive response below.

The government opposes the relief sought because the defendant has not satisfied the administrative exhaustion requirements of § 3582(c)(1)(A), which is mandatory. *See United States v. Muniz*, 16-cr-10170-MLW (Doc. 41, April 16, 2020). Accordingly, the defendant's motion should be denied pending his pursuit and exhaustion of an administrative remedy. In the interest of expediency, the government reserves its argument on the merits of the defendant's motion for compassionate release. Should the court be inclined to reach the merits of the defendant's motion for compassionate release, the government seeks leave to file a supplemental response.

## APPLICABLE LEGAL FRAMEWORK

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The statute, adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of Bureau of Prisons. The provision was amended by Section 603(b) of the First Step Act, effective December 21, 2018. Under the statute as amended, the court may consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate warden, whichever is sooner:

> The court <u>may not modify a term of imprisonment once it has been imposed except that</u>, . . . the court, upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, <u>may reduce the term of imprisonment</u>…

18 U.S.C. § 3582(c)(1)(A) (emphasis added). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and

Section 1B1.13 of the United States Sentencing Guidelines. The court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i); or that the defendant is at least 70 years old and has served at least 30 years in prison, among other things. 18 U.S.C. § 3582(c)(1)(A)(ii). In either case, the proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

## ARGUMENT

I. <u>The Defendant's Motion is Not Properly Before the Court Because He Failed to Comply with the Mandatory Exhaustion Requirements.</u>

As the defendant stated, he filed the instant motion eleven days after submitting a request for compassionate release to the Warden of MDC. Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Section 3582(c)(1)(A) conditions the Court's authority to consider a reduction of the term of a defendant's imprisonment on either (i) a motion of the Director of the Bureau of Prisons, or (ii) a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden, whichever is earlier. Neither of these conditions precedent have been triggered. Accordingly, the Court does not presently have the authority to grant the relief the defendant seeks, and "may not" modify his term of imprisonment.

The defendant attached to his motion his request to the Warden of MDC on April 2, 2020. Assuming that request triggered the start of the applicable 30 day period, the BOP has until at least May 4, 2020 to respond to the defendant's request. If BOP responds in a timely fashion and denies the request, the defendant is then required to "fully exhaust[ ] all administrative

3

remedies," 18 U.S.C. § 3582(c)(1)(A), before this Court has the authority to consider his motion. Thus, the Court presently cannot grant a modification of an imposed term of imprisonment under the statute, because the requirements under 18 U.S.C. § 3582(c) have not been met, and "there is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed a district court's discretion to modify a sentence is an exception to [§ 3582's] general rule [barring modification]." *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009); *cf. United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (noting that 18 U.S.C. § 3582(b) "states that a district court may not modify a term of imprisonment once it has been imposed unless the Bureau of Prisons moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so.").

Where, as here, Congress has included administrative exhaustion in the relevant statute, the Supreme Court has noted that "courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("'[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions,' however, 'statutory exhaustion provision[s] stand[] on a different footing,' and where a statutory exhaustion provision is mandatory, it '[f]oreclose[es] judicial discretion.'"). *See also Sousa v. INS*, 226 F.3d 28, 31 (1st Cir. 2000) ("The Supreme Court regards exhaustion requirements imposed by statute as more rigid than the common law doctrine[.]") Accordingly, statutory exhaustion requirements like that in § 3582(c) are subject to very few exceptions. *United States v. Lepore*, 304 F. Supp. 2d 183, 191 (D. Mass. 2004) ("Whereas judicially imposed exhaustion requirements are prudential and subject to a number of exceptions, statutory requirements are jurisdictional, and absent statutory specification, are subject to very few exceptions.").

Here, the plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights." Unlike the Prison Litigation Reform Act, for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies.[1] Thus, § 3582(c)(1)(A) is a mandatory exhaustion provision. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims).

Courts in this district and others have routinely relied on these mandatory exhaustion requirements to reject requests made under § 3582(c). *See, e.g.*, *Muniz*, 16-cr-10170-MLW (Doc. 41, April 16, 2020); *Cook v. Spaulding*, 2020 WL 231464 (D. Mass. Jan. 15, 2020) (Dein, J.); *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) ("The BOP has not brought the current motion and Monzon has not exhausted his administrative remedies. Consequently, this Court cannot grant his motion for sentence reduction" under § 3582(c) due to the defendant's health); *United States v. Raia*, No. 20-1033, Doc. 20 (3d Cir. Apr. 3, 2020) (as to motion for compassionate release based on pandemic, section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."); *United States v. Gileno*, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying motion for modification of sentence based on COVID-19 concerns "without prejudice to renewal" after exhaustion of remedies); *United States v. Oliver*, 2020 WL 1505899 (D. Md. Mar. 30, 2020) (enforcing exhaustion requirement under section 3582(c)(1)(A)); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (rejecting defendant's arguments that he should not

---

[1] In particular, the PLRA demands that an inmate exhaust "such administrative remedies as are available," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross*, 136 S. Ct. at 1856-58.

be required to exhaust and concluding "the court lacks authority to grant relief under § 3582(c)(1)(A)(i)."); *United States v. Zywotko*, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020) (same); *see also United States v. Nkanga*, (S.D.N.Y. Mar. 31, 2020) (Doc. 87) (concluding that "although the rational and right result is for Dr. Nkanga to be temporarily released from custody until circumstances improve, the Court is powerless at this point to bring about that result," and noting "Congress has given judges only limited tools, and there are many inmates—certainly those such as Dr. Nkanga who have just been sentenced, and potentially the vast majority of inmates serving sentences previously imposed—for whom judicial relief under current law may be unavailable").

    II.    <u>The Defendant Has Not Provided Grounds For An Exception to the Exhaustion Requirement</u>

The defendant contends exhaustion is not mandatory under § 3582(c) and that that the Court has the power to waive this requirement. Doc. 111 at 20. He argues that because he has a high risk of infection while incarcerated at MDC. *Id* at 22. Even assuming that such an exception exists, the Court should decline to find a waiver and still require the defendant to pursue a full BOP review of his case, particularly whereas here the defendant seeks to rely on factual claims about his health and the conditions of confinement as to which there is no fully developed record. Indeed, the BOP is uniquely positioned to assess and provide the Court with detailed information about the defendant's present health condition, the conditions of confinement, and the relative merits of the defendant's claim as opposed to the many others being made by similarly situated defendants at the same facility and across the country. Neither the Court nor the government currently has any information beyond the statements in the defendant's motion that can serve to support his contentions regarding his health or the conditions at MDC.

Contrary to the defendant's argument, publicly available information illustrates BOP's significant efforts to prepare and respond to the COVID-19 pandemic. In particular, since at least October 2012, BOP has had a Pandemic Influenza Plan in place. *See* BOP Health Management Resources, available at https://www.bop.gov/resources/health_care_mngmt.jsp. Moreover, since approximately January 2020, BOP began to plan specifically for COVID-19 to ensure the health and safety of inmates and BOP personnel. *See* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. As part of its Phase One response to COVID-19, BOP began to study "where the infection was occurring and best practices to mitigate transmission." *Id.* In addition, BOP stood up "an agency task force" to study and coordinate its response to COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the [World Health Organization (WHO)], the [Centers for Disease Control and Prevention (CDC)], the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President. BOP's planning is structured using the Incident Command System (ICS) framework." *Id.*

On April 1, 2020, BOP, after coordination with DOJ and the White House, implemented its Phase Five response in order to mitigate the spread of COVID-19. https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. As part of the Phase Five response, the BOP (a) will secure inmates in their assigned quarters for a 14-day period to decrease the spread of the virus, (b) continue to provide inmates access to programs and services that are offered under normal operating procedures, to the extent practicable, and (c) coordinate with the U.S. Marshals Service to reduce the movement of incoming inmates. The BOP will reevaluate Phase 5 after the 14-day period ends. *Id.* These steps belie any suggestion

that BOP is failing to meaningfully address the risks posed by COVID-19 or take seriously the threat the pandemic poses to current inmates, including vulnerable inmates such as the defendant.

In further response to the pandemic, the Attorney General of the United States issued a memorandum directing BOP to identify eligible inmates for transfer to home confinement. *See* Mem. from William P. Barr, Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (March 26, 2020)[2]. A second memorandum urged swiftness in transferring eligible inmates and also authorized the transfer of inmates to home confinement even where electronic monitoring is not available. *See* Mem. from William P. Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020)[3]. On April 5, 2020, the BOP announced that "[i]nmates do not need to apply to be considered for home confinement" pursuant to the Attorney General's memoranda. *See* Press Release, BOP, Update on COVID-19 and Home Confinement (April 5, 2020)[4]. Aside from the defendant's petition for compassionate release to the Warden at MDC, the defendant also appears eligible for the expedited BOP remedy of transfer to home confinement because his diabetes is an identified risk factor according to the CDC. The undersigned Assistant United States Attorney sought the status of the defendant's potential release to home confinement on April 14, 2020 and today by inquiring with BOP, but

---

[2] The memorandum is available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed April 17, 2020).

[3] This memorandum is available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last accessed April 17, 2020).

[4] Available at https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last accessed April 17, 2020).

8

has yet to receive a response. Understandably so, BOP has been inundated with compassionate release requests while at the same time moving at the directive of the Attorney General to transfer eligible inmates to home confinement expeditiously.

Lastly, the defendant has not demonstrated that the situation at MDC has neared a crisis level, such that his health is at immediate risk and thus warranting the extraordinary waiver of the exhaustion requirement. *See, e.g.*, *Gileno*, 2020 WL 1307108, at *4 ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."). At this time, the defendant's fear of contraction is speculative.

Accordingly, the Court is without authority to grant the relief requested by the defendant and his motion should be denied without prejudice to a later presentation under the terms of the 18 U.S.C. § 3582(c)(1)(A).

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's Expedited Motion for Compassionate Release without prejudice.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Date: April 17, 2020     By:    */s/ Philip C. Cheng*
                                Philip C. Cheng
                                Alathea E. Porter
                                Assistant United States Attorneys

# **CERTIFICATE OF SERVICE**

      I, Philip C. Cheng, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


Date: April 17, 2020                                          /s/ *Philip C. Cheng*
                                                                           Assistant United States Attorney